2004 ME 98

**In re BRANDON D. et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 24, 2004.
Decided: July 27, 2004.

---

Chris Ruge, Griffin & Jordan, L.L.C., Orono, for appellant.

Barbara L. Crider, Bangor, for appellee.

Lawrence E. Merrill, Bangor, for Guardian ad Litem.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] The father, Gary H., appeals from the judgments of the Penobscot County Probate Court (*Woodcock, J.*) granting the petitions of the mother, Melanie H., and her husband, Sean H., to terminate Gary's parental rights to his three children. Gary contends that the court erred in finding that he is unable or unwilling to take responsibility for the children within a reasonable time and in finding that he had abandoned the children. Gary also argues that the court erred in finding that termination of his parental rights was in the best interests of the children. We vacate the judgment for the reason that Melanie and Sean failed to prove that termination of Gary's parental rights was in the children's best interests.

## I. BACKGROUND

[¶ 2] Gary and Melanie were divorced in 1999. They have three children whose ages are: fifteen, ten, and nine. In the divorce judgment, Melanie was granted sole parental rights of the children, and Gary was granted the right to have contact with the children on the condition that he not drink alcoholic beverages twelve hours prior to and during the visitation. Gary was also ordered to pay weekly child support to Melanie. Melanie was ordered to

keep Gary informed of any change of address.

[¶ 3] Two years ago Melanie married Sean, and last year they petitioned the Probate Court to adopt the three children and to terminate Gary's parental rights.[1] Gary objected to the petitions, and the court appointed counsel for him and appointed a guardian ad litem for the children. A hearing was held on the petitions at which five witnesses testified, including Melanie, Sean, and Gary. The guardian did not testify but briefly addressed the court at the conclusion of the hearing. The guardian submitted written reports, but these were not offered or admitted into evidence. *See* 18–A M.R.S.A. § 9–204(c)(2) (1998); 22 M.R.S.A. § 4005(1)(D) (2004).

[¶ 4] After receiving written arguments from the parties, the court made findings of fact that are contained in the three judgments terminating Gary's parental rights—one judgment for each child. For the most part, the judgments are identical, with each divided into three parts. The first part is a recitation of the statute and synopsis of the testimony. This part also contains some findings, but most of it appears to be a summary of the evidence. Many of the statements in this part begin with the phrase "the witness testified that," but a few sentences contain the phrase "the court concludes" or "the court finds." However, most of the sentences contain none of these phrases, and from the context, it appears that the court is summarizing testimony.

[¶ 5] The second part of the termination judgments is entitled "Findings of Fact" and consists of twelve numbered sentences, which are identical in the three judgments except for the names and birth dates of the children. Of the twelve sentences, the first three contain only preliminary information such as the names of the parties, the child's name and birth date, and the fact that Melanie and Gary were divorced. The last three sentences parrot the statutory language. The middle six sentences are as follows:

4. Gary . . . knew where [Melanie's] mother lived.

5. Gary . . . knew the telephone number of [Melanie's] mother.

6. Gary . . . called [Melanie's] mother once.

7. Gary . . . has paid no support for the child.

8. [The child] has been living in [Melanie and Sean's] home.

9. [The child] has done very well in [Melanie and Sean's] home.

[¶ 6] The third part of the termination judgments is entitled "Conclusions of Law" and contains only the following sentence: "The parental rights of Gary . . . in respect to his child . . . are hereby terminated."

[¶ 7] From the sentences in the judgments that appear to be findings and from the facts that the transcript reveals to be uncontested, the following factual scenario emerges. Gary is an alcoholic, who has participated in a number of rehabilitation programs over the years. He went on a drinking binge when he was served with the divorce complaint. He has been sober for the past two years. For a considerable time Gary was unemployed and had no assets. He has never paid child support for the children. He last attempted a visit with the children in February 2000, but Melanie refused to let him see the children

---

1. Melanie and Sean filed a petition for each child. The petitions for termination of paren-

tal rights were consolidated for hearing.

because he was drunk. Subsequently, Melanie moved and did not notify Gary where she was living. There was conflicting evidence about Gary's attempts to find Melanie and to contact the children.

[¶ 8] Melanie married Sean in May, 2002, and since that time Sean has helped to raise the children. The court stated that the children are in a "solid, secure and stable situation," and specifically found that the children should not be taken from their present living environment.

[¶ 9] The court concluded that Gary was unable or unwilling to take responsibility for the children within a time reasonably calculated to the meet the children's needs and had abandoned the children. The court further found that it was in the best interests of the children for Gary's parental rights to be terminated. After it entered judgments terminating Gary's parental rights, Gary requested additional findings, but the court denied his request. Gary then appealed the judgments.

## II. DISCUSSION

[¶ 10] Although a proceeding for the termination of parental rights in the probate courts is initiated by private parties in conjunction with an adoption proceeding, 18–A M.R.S.A. § 9–204(a), the statutory requirements are the same as when the Department of Human Services seeks to terminate parental rights in the District Court, 18–A M.R.S.A. § 9–204(b) (Supp.2003). *See* 22 M.R.S.A. § 4055(1) (2004); *In re Dylan B.,* 2001 ME 31, ¶ 2, 766 A.2d 577, 577–78; *In re Kenneth H.,* 1997 ME 48, ¶ 6 & n. 3, 690 A.2d 984, 985. The petitioner must prove, by clear and convincing evidence, that the parent is unfit and that termination is in the best interest of the child. 22 M.R.S.A. § 4055(1). Our standard of review when the burden of proof is clear and convincing evidence is whether the fact-finder "could reasonably have been persuaded that the required findings were proved to be highly probable." *In re Serena C.,* 650 A.2d 1343, 1344 (Me.1994) (quotation marks omitted).

[¶ 11] Other than its findings that the children are living in a stable and secure environment where they have done well and that they should not be moved from it, the court made no other findings expressly about the best interests of the children. The findings about Gary's failure to pay child support are relevant to the best interests of the children. Likewise, evidence regarding a parent's lack of contact with a child is generally relevant to the best interest analysis. However, the findings in this matter are extremely sparse and contain inconsistencies.[2]

[¶ 12] Because the findings are incomplete and because Gary requested further findings of fact and his motion was denied, we are unable to give the usual deference to the court's conclusions. We have previously stressed the need for courts to make findings, instead of summarizing evidence, in parental termination cases. *In re Kenneth H.,* 1997 ME 48, ¶¶ 3–5, 690 A.2d at 985. We do not assume that a court's incomplete findings support its conclusions when a party has requested additional findings and the court has denied the request. *Bayley v. Bayley,* 602 A.2d 1152, 1154 (Me.1992).

2. An example of an inconsistency is the court's specific finding that Gary knew the whereabouts of Melanie's mother and called her once. From that fact there is an unstated inference that if Gary wanted to find the children he could have tried harder to reach Melanie's mother. However, the court also noted that there was no doubt that Gary sought to contact the children by telephone. The court repeated Gary's testimony that he tried many times to contact the children.

[¶ 13] The court's lack of findings is in direct proportion to the lack of evidence presented by Melanie and Sean. There was no evidence about the needs of the children nor was there any evidence of harm that the children might suffer if Gary's parental rights were not terminated. Although Melanie and Sean did not testify expressly about their reason for seeking termination, a fair inference from their testimony is that Sean had established a parental relationship with the children, and he wanted to adopt them. In acknowledging that the children were doing well living with Melanie and Sean, the court stated: "This living environment should not be taken from [the children]." If the court assumed that by not terminating Gary's parental rights, the children's environment would be changed, it did not illuminate how that would be so. There was no evidence that the children's living situation would be somehow altered if Gary's parental rights were not terminated.[3]

[¶ 14] At the conclusion of the evidence, the guardian stated that he thought an adoption of the children would be beneficial because the children would have the same name as the parent they were living with and because it would provide them with more stability than they had when they were living with both parents. The guardian further stated that the children had told him that "they basically have forgotten [Gary]." The guardian went on to state: "If there were a way to adopt without terminating, I'd say that would be wonderful . . . ."

[¶ 15] The evidence of the children's best interests was insufficient and failed to establish as highly probable that it is in the best interests of the children to terminate Gary's parental rights.

The entry is:

Judgment vacated.

---

**3.** Gary testified that three weeks before the hearing he had become employed full-time doing high-rise construction in Florida and that he was willing and able to start paying child support. He also testified that he believed his children were in good hands and that he respected Melanie and Sean for the good job that they had done raising the children. Gary said that he wanted to be able to telephone the children once or twice a month and write to them.