STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-712

REC CUM  1. 08/05

MICHAEL KOHARIAN, by
his father and next friend,
BRUCE KOHARIAN

        Plaintiff

    v.

PAUL URENECK SR., LAURA
ANGELONE, and PAUL
URENECK, JR.

        Defendants

ORDER ON
DEFENDANTS' MOTION
FOR SUMMARY
JUDGMENT

        Before the court is Defendants Paul E. Ureneck, Sr. ("Defendant's father")

and Laura Angelone's ("Ms. Angelone") motion for summary judgment in their

favor against Plaintiff Michael Koharian, a minor, by and through his father,

Bruce Koharian ("Plaintiff").

## UNDISPUTED FACTS

        On the evening of Thursday, April 22, 2004, Defendant, Defendant's father

and Ms. Angelone, Defendant's stepmother[1], were at home in Portland.

Defendant was at this time seventeen and a half years old. Defendant's father

and Ms. Angelone spent most of the evening watching television in their room,

and Defendant was in the garage with two friends. Unbeknownst to Defendant's

father and Ms. Angelone, Defendant and his friends had that evening gone out

into the street in front of their home and confronted Plaintiff and his friends, who

had parked a car across the street from Defendants' home. Thereafter, also

---

[1] Ms. Angelone and Defendant's father were married in 1994.

without Defendant's father's or Ms. Angelone's knowledge, sometime between 9:00 and 10:00 PM, Defendant and his friends went into the woods near their home. Defendant approached the 16-year-old Plaintiff and told Plaintiff to hand over his backpack. Words were exchanged, and Defendant struck Plaintiff. This disrupted the gathering, and, as Plaintiff's friends were getting ready to leave, Defendant came up behind Plaintiff, grabbed him, head-butted him twice in the face, and then beat Plaintiff in the head with brass knuckles. Defendant then kicked Plaintiff until he was unconscious and tried to roll or drag his body into the Presumpscot River.

At the time of the assault, Defendant was on a probation that had begun on January 13, 2003 after Defendant had pled guilty to criminal trespass and theft. Ureneck Sr. Exhibit 3. This probation was extended after an incident on October 17, 2003, in which Defendant had fought a high school classmate. Ureneck Sr. Exhibit 25 (Defendant's answers to Plaintiff's interrogatories.) The conditions of his release after the October 17, 2003 incident were a short period of house arrest, followed by a return to the conditions of his probation, with the additional imposition of a 10 PM curfew. *Id.* On the night of April 22, 2004, this 10 PM curfew was in effect.

Prior to April 22, 2004, the Division of Community Corrections had seven times petitioned for revocation of Defendant's probation, for (1) setting off fireworks on school property, on or around February 1, 2003, (2) failing to abide by house arrest on or around March 31, 2003, (3) being charged with reckless and disorderly conduct by the Portland Police Department on September 16, 2003, (4) the October 17, 2003 fight and failure to abide by curfew, (5) being suspended from high school on or around January 20, 2004, (6) failure to reside at his

Juvenile Court Corrections Officer-approved placement (7) being charged with assault by the Portland Police Department on or about February 19, 2004. Prior to these incidents, in 2002, as a freshman in high school, Defendant had been suspended for fighting with a classmate.

On the night of the incident, Defendant's father checked in on Defendant at least once, and, at 10 PM, told Defendant to leave the garage and come into the house. At 10 PM, Defendant had already committed the assault on Plaintiff in the woods, and had returned home to the garage.

Defendants claim that the undisputed facts establish:

(1) that Ms. Angelone owes no duty to Plaintiff to control the conduct of Defendant, as she is not his mother and

(2) that Defendant's father did not breach his duty to Plaintiff to exercise reasonable care to control Defendant.

## DISCUSSION

Restatement (Second) of Torts § 316, adopted in *Merchant v. Mansir*, 572 A.2d 493, 493 (Me. 1990) imposes a duty on a parent to control his minor child to prevent him from intentionally harming others. The duty established by § 316 is narrow. *See e.g. Frazier v. Byrum*, 1995 Me. Super. LEXIS 486, *5. It imposes a duty on a parent to exercise reasonable care to control his child only if two criteria are met:

(1) the parent knows or has reason to know that he has the ability to control his child and

(2) the parent knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts, § 316.

The first question presented on this motion, which has not been addressed by the Law Court, is who qualifies as a "parent" under § 316. *See Merchant v. Mansir*, 572 A.2d at 493 ("Because we find that there was no breach of even a parent's standard of care, we do not decide whether the defendant had any reduced obligation as a stepparent.")

Plaintiff claims that Ms. Angelone, Defendant's stepmother, had a duty under § 316 to supervise Defendant. However, in the absence of any indication within the Restatement, its commentary, or case law, that the words "parent" and "child" are meant to include stepparents and stepchildren these words are given their legal meaning. 19-A M.R.S. § 101(8) (general provisions of Maine's Domestic Relations title) defines "parent" as "the legal parent or the legal guardian when no legal parent exists." In Maine, marriage between two people, one or both of whom have children, does not confer status on the husband or wife as a legal parent. *See, e.g. In re Brandon D.*, 2004 ME 98, ¶ 3. Rather, there is a separate and distinct procedure under the Probate Code for obtaining status as a child's legal parent through adoption. *See* 18-A M.R.S. §§ 9-301 – 9-315. Plaintiffs do not claim, and there is no evidence before the court that Ms. Angelone has adopted Defendant. Thus, Ms. Angelone is not subject to § 316's duty with respect to her stepchildren.

Turning to Defendant's father, there is no dispute that § 316 does impose a duty. *See Merchant v. Mansir*, 572 A.2d at 493; *see also Dinsmore-Poff v. Alvord*, 972 P.2d 978, 987 (Ak. 1999) (stating that under § 316, parents owe a general duty to be prepared to control their children, but that a specific need and opportunity to exercise control must arise in order to convert this into a duty to act.) Defendants assert that Defendant's father met his duty by calling his son in from the garage

at his 10:00 PM curfew on April 22, 2004. Plaintiff asserts that, to the contrary, Defendant's father was aware of Defendant's violent tendencies, and because of this he was under a greater obligation to exercise vigilance with respect to Defendant.

There is no question that, on the evening of April 22, 2004, Defendant's father was aware of his son's general propensity for trouble, including engaging in physical aggression. However, Defendant's father's awareness of his son's general propensity toward physical aggression is not the same as an awareness of a need, opportunity, and ability to control his son under § 316. Plaintiff must make out a prima facie case on this standard in order to survive summary judgment.

The Law Court has indicated that a parent's knowledge or reason to know of the necessity and opportunity for exercising control over his child must be knowledge of a specific danger. *See Bedard v. Bateman*, 665 A.2d 214, 215 (Me. 1995) (parents had no knowledge or reason to know of the necessity for exercising control over their 13-year-old daughter's use of a jet ski at the time of the accident); *Merchant v. Mansir*, 572 A.2d at 494 (stepfather had no knowledge or reason to know of the plaintiff child's visit to his home at the time his stepchild supplied the plaintiff with a defective bicycle.) And, courts in other jurisdictions have explicitly found that, in cases where a parent has no knowledge or reason to know of a specific need and opportunity to control his child, no duty to act arises. *See Dinsmore-Poff v. Alvord*, 972 P.2d at 987.

Here, Plaintiff has alleged that, if Defendant's father had checked in on his son more often on the evening of April 22, 2004, he might have prevented Defendant from going into the woods and assaulting Plaintiff. However, just as

in *Bedard* and *Merchant*, Plaintiff can point to no evidence that Defendant's father either knew or should have known prior to the occurrence, that his son was going to commit this specific act of violence on this night. *See* 665 A.2d at 215; 572 A.2d at 494. If he had by chance seen Defendant heading out of the garage with a weapon, he would have had knowledge of a need to exercise control over Defendant and he may have had an opportunity to do so as well. *See id.* But, no parent can be ever-present in his child's life, and § 316 does not impose liability on a parent for not being present at a fateful moment when that child decides to commit a violent act. *See id.*

The order is:

> Defendants' motion for summary judgment on Plaintiff's claims against Laura Angelone and Paul Ureneck, Sr. is GRANTED.

Dated at Portland, Maine this 28th day of October, 2005.

Robert E. Crowley
Justice, Superior Court

Maine 04112-0287

NICHOLAS BULL ESQ
THOMPSON BULL FUREY BASS & MACCOLL
PO BOX 447
PORTLAND ME 04112-0447

< OF COURTS
berland County
.O. Box 287
Maine 04112-0287

BARRI BLOOM ESQ
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME 04112-9545

OF COURTS
rland County
Box 287
aine 04112-0287

MAURA KEAVENEY ESQ
234 BRIGHTON AVE
PORTLAND ME 04102