2008 ME 168

**In re JACOB B.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 2, 2008.

Decided: Nov. 13, 2008.

Joseph Pickering, Esq., Largay Law Offices, P.A., Bangor, ME, for the father.

Joseph M. Baldacci, Esq., Bangor, ME, for the mother.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] The father of Jacob B. appeals from a judgment entered in the Penobscot County Probate Court (*Woodcock, J.*) terminating his parental rights to Jacob B. The termination proceeding was initiated by Jacob's mother in order to allow her husband, Jacob's stepfather, to adopt Jacob. The father argues that the Probate Court erred in (1) finding termination of his parental rights was in Jacob's best interest, and (2) refusing to vacate his child support arrearage. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] Jacob was born on February 17, 1999. On April 20, 2001, a parental rights order was entered in the District Court (Bangor, *A. Murray, J.*), granting the mother primary residential custody, establishing a child support obligation, and providing the father with visitation.

[¶ 3] In 2003, the father was arrested and charged with drug-related crimes. Subsequently, he pleaded guilty to federal drug charges for manufacturing marijuana. The father was sentenced to sixty months in prison. He expects to be released in January 2009, but will likely be confined to his home until June 2009.

[¶ 4] On April 23, 2007, the District Court reduced the father's child support obligation to $0 per week. Prior to this reduction, the father had accumulated an arrearage of $12,442.76 in overdue child support. The father had paid no child support and had no contact with the child since September 2001 or 2002.

[¶ 5] The mother began living with her current husband in December 2002. They married on May 6, 2006. The current husband has been the primary father figure for the child since he began dating the mother.

[¶ 6] On November 27, 2006, the mother filed a petition for adoption and change of name with the Probate Court. On December 4, 2006, the mother filed a petition to terminate the father's parental rights. A hearing on the latter petition was held in January 2008.[1]

[¶ 7] On March 20, 2008, the court granted the petition to terminate the father's parental rights. After summarizing the evidence, the court's order included detailed findings leading to its conclusions. Those findings are all supported by competent evidence in the record. The court summarized its general findings as follows:

---

1. The father participated by telephone from federal prison.

The father has shown little or no interest in the child even before his imprisonments.

The father has given no guidance to the child.

The father has not supported the child for a number of years.

The father has failed to contact the child for years.

The evidence persuades the Court by clear and convincing evidence that [the father] is unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs.

This Court, by clear and convincing evidence, believes that the termination of the father's parental rights to the child would be in Jacob's best interest.

[¶ 8] Following its statement of general findings, the court stated seventeen specific findings that supported its general findings regarding parental fitness and best interest of the child, as follows:

1. The father has had no contact with the child for some 5 years.
2. The father's lack of contact includes no cards, letter, or presents to the child for some 5 years.
3. The father paid $75.00 a week support and then voluntarily raised said payments to $100.00 a week.
4. Other than 1 small payment, the father has paid no support for 5 years.
5. The father's support arrearage is in excess of $12,000.00.
6. The father has made no attempt to establish a family relationship with the child.
7. The father has made no attempt to bond with the child.
8. The father has been incarcerated intermittently from 2004/2005.
9. The father has not seen his son for 2–3 years.[2]
10. The father did not include the son in his life even before he was incarcerated.
11. The son needs continued stability, structure, guidance, affection, and support in his life.
12. The father's release date from incarceration is January 2009.
13. The father will have home confinement after his said release until June 2009.
14. The 9–month term of incarceration still to be served by the father is a long time from the perspective of a 9–year–old.
15. There has been no nurturing parental responsibility between father and son.
16. The child has spent the major part of his life with his mother and stepfather.
17. The child appears to view his stepfather as his psychological father.

[¶ 9] After reciting its specific findings, the court stated its conclusions, supported by the findings that justified its termination of parental rights. Thus, the court concluded:

1. Petitioner [the mother] has established by clear and convincing evidence that Respondent [the father] is unwilling or unable to take responsibility for the child within a time reasonably calculated to meet the child's needs.

---

2. Taken most favorably to the father, the evidence in the record indicates that prior to the 2008 date of the court's decision, the father had not had contact with his son since 2002.

Because this apparent error in the court's fact-findings works in the father's favor, we do not discuss it further.

2. Petitioner has established by clear and convincing evidence that termination of Respondent's parental rights is in the best interest of the child.

In reaching its decision, this Court has considered carefully the needs of this child, the child's age and relationship with the Respondent and with the Petitioners, and the amount of time spent with each of the parties and the child's ability to integrate into the Petitioners' home.

[¶ 10] The father filed a motion to amend and for further findings and conclusions. Relevant to this appeal, the father's motion stated,

The Respondent [the father] is seeking specific factual findings regarding the best interests of Jacob. Both the mother and step father testified that Jacob would continue to live with them in the event that the Petition was denied and that the father/son relationship would continue with the stepfather even if the Petition was denied. The Respondent is seeking factual findings on this issue. The Respondent is requesting that the court make factual findings on how the child would continue to live with his mother and step father if the petition was denied and that the child would continue to have a father/son relationship with the stepfather if the petition was denied. In his brief, the Respondent noted that the stepfather could acquire equitable parental rights to share with the mother and father in a District Court action. Also, the court could grant an adoption for all three parents. The Respondent is requesting that the Court make factual findings on how it would be detrimental to the child if the petition was denied.

The court denied the motion. The father then brought this appeal.

[¶ 11] Because the father was not seeking custody, but merely to retain his rights and visitation with the child, he argues on appeal that the court was not required to find that he could provide a "normal family home" for the child. Instead, the father argues that the court had to determine that his requested limited contact with the child would jeopardize the child in order to find that termination of parental rights was in the child's best interest. The father asserts that because no evidence was presented that a continuing, limited relationship with the child would harm the child, the court erroneously terminated his parental rights.

## II. LEGAL ANALYSIS

### A. The Best Interest Findings

[¶ 12] The father's argument could be made in many termination of parental rights cases when a parent is not inherently dangerous to children and has abandoned a child for a long period of time. The father argues that without *any* evidence of contact with the child, there can be no evidence that limited contact between the child and the absent parent would be harmful. Therefore, the father argues, parental rights cannot be terminated. The father's argument is misplaced because the best interest standard looks to many factors that affect the best interests of the child—it is not limited to whether or not there is affirmative evidence that contact with an absent parent will be harmful to the child.

[¶ 13] The same standards apply to a private party petition to terminate parental rights that apply to a DHHS petition to terminate parental rights. *In re Brandon D.*, 2004 ME 98, ¶ 10, 854 A.2d 228, 231. The father concedes the court's finding that he is "unwilling or unable to take responsibility for the child within a

time reasonably calculated to meet the child's needs." Accordingly, we need only address the father's claim that there were insufficient findings to support the court's conclusion that termination was in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a) (2007).

■ [¶ 14] In determining whether termination of parental rights is in the child's best interest, a court must consider many factors, including the needs of the child, the child's age, attachment to relatives, periods of attachment and separation, the child's ability to integrate into a substitute placement or back into his parents' home, and the child's physical and emotional needs. *See In re Hope H.*, 541 A.2d 165, 166 (Me.1988). Findings that a parent has failed to pay child support and a parent's lack of contact with a child are also relevant to determine whether termination is in a child's best interest. *See In re Brandon D.*, 2004 ME 98, ¶ 11, 854 A.2d at 231. Evidence of a child's needs and the harm the child may suffer if the parent's rights are not terminated is also important. *See id.* ¶ 13, 854 A.2d at 232. Courts may also consider a parent's inability or past unwillingness to take responsibility for the child. *In re Marcus S.*, 2007 ME 24, ¶ 7, 916 A.2d 225, 227. Additionally, permanency and stability are important factors. *Id.* ¶ 10, 916 A.2d at 228. "Permanency is a dynamic concept that must be fashioned from the actual circumstances and needs of the child ... before the court." *Id.* (holding mother's continued rights would disrupt reunification with father). The Probate Court's individual separate findings addressed each of these issues.

[¶ 15] In termination of parental rights matters, "the court shall make findings of fact and state its conclusions of law thereon whether or not requested by a party." M.R. Civ. P. 52(a); *see also In re Sara K.,*

611 A.2d 71, 74 (Me.1992). A trial court is not required to make further findings in response to every post-judgment request for findings pursuant to M.R. Civ. P. 52(a). If the court's original findings are sufficient to support its conclusions, and if those findings are supported by evidence in the record, a decision is "sufficient if the findings of fact and conclusions of law appear therein." M.R. Civ. P. 52(a).

[¶ 16] The court's findings regarding the father's long abandonment of the child and failure to pay support; that the father "has shown little or no interest in the child," has "made no attempt to establish a family relationship with the child," has "made no attempt to bond with the child," and "did not include the son in his life" before he was incarcerated; that the child needs "continued stability, structure, guidance, affection, and support in his life"; and that the child views his stepfather "as his psychological father," all support the ultimate best interest conclusion.

[¶ 17] On appeal, the father asserts that the court's findings are insufficient because the court did not make specific findings that continuing the relationship to the father would be harmful to the child. Such a finding of prospective harm would have been difficult in a child abandonment case when there had been no parent-child relationship for five years. But such an affirmative negative finding is not necessary, and may have been justifiably avoided by the court to preserve the father's self-respect and the child's respect for the father. Preserving self-respect and mutual respect may be important here, as the prospective adoptive parents have indicated that they may permit limited father-son contact in the future.

■ [¶ 18] Many factors can combine to support a best interest determination, even when an affirmative negative finding

regarding a continued relationship is lacking.

[¶ 19] The court considered the child's needs including his need for stability, which is based on individual circumstances. The father had not attempted to contact the child in almost five years, including two or three years prior to his incarceration. Even prior to being incarcerated, the father did not financially support the child; the father was convicted of federal drug charges; the father was unable and unwilling to take responsibility for the child within a time reasonably calculated to meet the child's needs; and the child was raised by the stepfather and mother. Here, when there was little or no prior relationship, it was within the court's discretion to determine that the child will not benefit from a continued parental relationship with his biological father. All of this evidence shows that the father did not, and was not likely to, provide the child with a "nurturing parental relationship," *see In re Daniel C.*, 480 A.2d 766, 769 (Me.1984), and supports the court's decision that termination is in the child's best interest. Therefore, we affirm the Probate Court's termination of the father's parental rights.

B. The Child Support Arrearage

■ [¶ 20] The father does not deny that he stopped paying child support or accumulated a large arrearage.[3] Instead, he sought to have the arrearage vacated if his parental rights are terminated. The father argues that because all of his rights were divested, that his duties and obligations, including child support, should also be divested by the Probate Court.

[¶ 21] Title 19–A M.R.S. § 1653(10) (2007) permits modification or termination of orders regarding parental rights and responsibilities. These orders originate in the District Court, and the District Court retains jurisdiction to amend or terminate such orders. The Probate Court properly declined to interfere with a child support order of the District Court.

The entry is:

Judgment affirmed.

---

3. The father alleges that he took the money he should have been paying and put it in a safe, which was confiscated by the federal government as drug transaction money following his arrest in 2003. He did not file a motion to modify his child support obligation, however, until October 6, 2006.