2012 ME 127

**ADOPTION OF L.E.**

Supreme Judicial Court of Maine.

Argued: Sept. 12, 2012.
Decided: Nov. 13, 2012.

Michael G. Keefe, Esq., Portland, on the briefs and argued, for appellant father.

Erika S. Bristol, Esq., Auburn, on the briefs and argued, for appellant mother.

Christopher P. Leddy, Esq., Ainsworth, Thelin & Raftice, P.A., South Portland, on the briefs and argued, for appellee grandparents.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

JABAR, J.

[¶ 1] The parents of L.E. appeal from a judgment of the Cumberland County Probate Court (*Mazziotti, J.*) terminating their parental rights. The mother challenges the sufficiency of the evidence terminating her rights, and both parents argue that the court erred in failing to order attempts at rehabilitation and reunification prior to granting the petition for termination. Finding no error, we affirm the judgment.

## I. BACKGROUND

[¶ 2] L.E. was born on May 30, 2008, to parents who had been married for approximately two years. Both parents had criminal histories before their relationship: the mother was convicted of embezzlement in New Hampshire in 2003 and served a four-month sentence; the father assaulted his five-month-old son by another woman in 1997, causing severe and permanent injuries, and spent seven years in prison. The parents met about eighteen months after the mother's release from prison, and the mother learned of the father's prior conviction shortly before they were married.

[¶ 3] After getting married, the parents committed fraud against L.E.'s maternal grandparents. The grandparents purchased a home for the parents and retained a mortgage. Without the grandparents' knowledge, the parents arranged for the mortgage to be fraudulently discharged, which permitted them to obtain another loan. In August of 2009, the grandparents discovered the parents' fraud. The fraud resulted in the parents' incarceration in 2010.[1]

[¶ 4] While the fraud was ongoing, the parents' relationship deteriorated. During a visit to the parents' home, the grandmother noticed holes in the walls, dents in a new refrigerator, and a broken television, which the mother said were all caused by the father. The mother sought and received a protection from abuse order against the father in July of 2009, and they separated on July 27, 2009.

[¶ 5] With the incarceration of the parents approaching in April of 2010, the Probate Court granted the petition of L.E.'s grandmother for a temporary guardianship over L.E. with the parents' consent. Even before their incarceration began, however, the grandmother ended contact between L.E. and the parents. The court awarded a permanent guardianship over the parents' objection on November 5, 2010, and on November 19, 2010, the grandparents petitioned to adopt L.E. and terminate the parental rights of both parents. The mother's incarceration ended on April 29, 2011, and a hearing on the termination of parental rights was held on July 14, 15, and August 19, 2011.

[¶ 6] At the hearing, the court received testimony from psychologist William M. Barter, Ph.D., who evaluated the mother on two occasions during her incarceration and diagnosed her with antisocial personality disorder. Barter concluded that the mother was narcissistic and self-focused, which he interpreted as a sign of low self-esteem. This narcissism causes the mother to put her needs ahead of others and make decisions without considering the potential impact on others. Barter's evaluation indicated that the mother has a seriously impaired ability to perceive the actions of others accurately and understand what those actions signify. Based on this evaluation, the court found that the mother is unable "to think logically and coherently[,] which made her less capable of coming to reasonable conclusions about events."

[¶ 7] Barter identified several behaviors suggestive of antisocial personality disorder. The mother told Barter that she had contacted the father to discuss L.E. while both were incarcerated despite sen-

---

1. On September 2, 2010, the trial court (*Marden, J.*) entered a judgment of conviction, following the mother's guilty plea, of negotiating a worthless instrument (Class B), 17–A M.R.S. § 708(1)(B)(1) (2011); aggravated forgery (Class B), 17–M.R.S. § 702 (2011); theft by deception (Class B), 17–A M.R.S. § 354(1)(B)(1) (2011); and failure to appear (Class E), 15 M.R.S. § 1091(1)(A) (2011). The record does not include specific information concerning the father's convictions, but the parties seem to agree that he was convicted of similar crimes for his role in the fraud.

tencing conditions prohibiting her from doing so. Barter indicated that this action would be consistent with antisocial personality disorder because it showed a disregard of the law. Similarly, Barter viewed the mother's fraud against the grandparents as very similar to the prior embezzlement in New Hampshire in that it exposed her to punishment again. Barter opined that the mother will tell people whatever is necessary, even in disregard of the truth, to ensure that her needs are met, and that is consistent with an antisocial personality disorder.

[¶ 8] Katie McCoy, a licensed clinical social worker, testified about the mother's therapy following her most recent incarceration. McCoy acknowledged that therapy for the mother would be very slow and its success might not be known for at least two years. She testified that the mother might be able to reestablish a relationship with L.E. in six months. According to the guardian ad litem, the mother is unable to appreciate L.E.'s interests because despite expressing an interest in devoting more time to L.E., the mother did not acknowledge L.E.'s need for permanency or that any contact would be subject to the guardianship.

[¶ 9] Applying the presumption of unfitness stemming from his prior aggravated assault on his other child, *see* 22 M.R.S. § 4055(1–A)(B)(5) (2011), the court found that the father was unable or unwilling to protect L.E. from jeopardy and that those circumstances were unlikely to change within a time reasonably calculated to meet L.E.'s needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i) (2011). The court also found that the mother has been unwilling or unable to take responsibility for L.E. within a time reasonably calculated to meet the child's needs due to her personality disorder and uncertain prognosis. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii) (2011). Finally, the court found that termination is in

L.E.'s best interest because (1) an adoption would mean that there would be no physical change in circumstances; (2) contentious judicial proceedings would negatively impact L.E. absent termination; (3) the mother and father expressed interest in bringing the father, who poses a threat to L.E., back into the child's life; and (4) L.E. was "happy, comfortable, and free to enjoy spontaneous play" in her grandparents' home. *See* 22 M.R.S. § 4055(1)(B)(2)(a) (2011).

[¶ 10] The Probate Court issued its judgment terminating the parents' parental rights on January 11, 2012. The parents timely appealed pursuant to 18–A M.R.S. § 1–308 (2011) and Maine Rule of Appellate Procedure 2.

## II. DISCUSSION

[¶ 11] The Adoption Act, codified in article IX of title 18–A of the Maine Revised Statutes, incorporates by reference title 22, chapter 1071, subchapter VI, which deals with termination of parental rights in the child protection context. 18–A M.R.S. § 9–204(b) (2011) (incorporating by reference 22 M.R.S. §§ 4050–4059 (2011)). Pursuant to the Adoption Act, a petitioner seeking adoption in the Probate Court may file a petition to terminate parental rights contemporaneously with a petition for adoption. 18–A M.R.S. § 9–204(a) (2011). Therefore, in contested adoption proceedings where parental rights have not been previously terminated and the child is under the age of eighteen, absent consent from the parents, the petitioner must prove by clear and convincing evidence that the parent is unfit and termination of parental rights is in the best interest of the child. 18–A M.R.S. § 9–302(b)(2) (2011); 22 M.R.S. § 4055(1)(B)(2); *In re Brandon D.,* 2004 ME 98, ¶ 10, 854 A.2d 228. When the burden of proof at trial is clear and

convincing evidence, our review is to determine "whether the fact-finder could reasonably have been persuaded that the required findings were proved to be highly probable." *In re Brandon D.*, 2004 ME 98, ¶ 10, 854 A.2d 228 (quotation marks omitted). "We review the court's factual findings related to the child's best interest for clear error, but its ultimate conclusion regarding the child's best interest for abuse of discretion." *See In re Thomas H.*, 2005 ME 123, ¶ 16, 889 A.2d 297. In order to preserve the parents' due process rights, the court must determine that the parent is unfit before making a finding that termination is in the best interest of the child. *In re Scott S.*, 2001 ME 114, ¶¶ 19–20, 775 A.2d 1144.

## A. Fitness

[¶ 12] The termination subchapter provides circumstances under which a court may declare that a person is unfit to parent a child. Section 4055(1)(B)(2)(b) of title 22 states that a court may find a parent unfit if:

(i) The parent is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs;

(ii) The parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs;

... or

(iv) The parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041.

In this case, the court rendered its decision pursuant to subsections (i) and (ii), finding that the father was unwilling or unable to protect the child from jeopardy, and that the mother is unwilling or unable to take responsibility for the child within a time reasonably calculated to meet the child's needs.

[] [¶ 13] During an adoption proceeding, the Probate Court is not required to order attempts at reunification before terminating parental rights. Section 4041, which deals with the obligation of the Department of Health and Human Services to pursue rehabilitation and reunification efforts in the protective context, is not among the sections of title 22 incorporated into the Adoption Act. *See* 18–A M.R.S. § 9–204(b) (incorporating by reference 22 M.R.S. §§ 4050–4059).[2] However, the Adoption Act does incorporate the termination subchapter's purpose, which is to "[a]llow for the termination of parental rights at the earliest possible time *after rehabilitation and reunification efforts have been discontinued* and termination is in the best interest of the child." *See* 22 M.R.S. § 4050(1) (emphasis added). In this case, there were no attempts by either the mother or the father to ask the court to order rehabilitation and reunification efforts. Unlike the Department's obligation contained in 22 M.R.S. § 4041, the Adoption Act does not require petitioners to engage in rehabilitation and reunification efforts before seeking termination of parental rights and subsequent adoption. Therefore, the court did not err in failing to order, sua sponte, attempts at rehabilitation and reunification prior to granting the petition for termination. Because that was the only challenge to the termination

---

**2.** Even though not controlling, 22 M.R.S. § 4041 (2011) concerns reunification in the child protection context, and therefore, provides some guidance here. Although section 4041 requires the Department of Health and Human Services to pursue reunification, its

failure to do so does not preclude a termination of parental rights, *In re Doris G.*, 2006 ME 142, ¶ 16, 912 A.2d 572, and does not violate the parent's constitutional rights, *In re Daniel C.*, 480 A.2d 766, 771–72 (Me.1984).

pressed by the father, we do not address his appeal further.

[¶ 14] The remaining question is whether the record before the court was sufficient to establish by clear and convincing evidence that the mother is unwilling or unable to take responsibility for L.E. within a time reasonably calculated to meet her needs. We have stated:

> A parent's fitness is usually called into question due to a serious issue that bears directly on his or her ability to adequately parent the child, such as physical abuse or neglect, sexual abuse, substance abuse, emotional abuse and significant mental health problems, a proven inability to care for a child with special needs, or a history of domestic violence.

*Adoption of Tobias D.*, 2012 ME 45, ¶ 22, 40 A.3d 990 (citations omitted).

[¶ 15] Here, relying heavily on the testimony of Barter, the court found that the mother's behavioral disorder would prevent her from being a predictable attachment figure for L.E. and would impede her ability to provide a warm and stable environment. The court acknowledged that because of the mother's incarceration, L.E. had been living with her grandparents for nearly half her life, and although the mother may be able to reestablish a relationship with L.E. eventually, the process would be slow and lengthy. Also, although testimony at the hearing indicated that the mother might respond favorably to treatment, the prospects of success were uncertain and preliminary results regarding any such success would not be available for several years. Based on these findings, the court rationally could have found by clear and convincing evidence that the mother is unwilling or unable to take responsibility for L.E. within a time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii); *In re Alana S.*, 2002 ME 126, ¶¶ 13, 22–23, 802 A.2d 976 (finding clear and convincing evidence that parents were unfit despite parents' good faith efforts to reunify).

**B. Best Interest of the Child**

[¶ 16] In addition to evidence of unfitness, the record also established that at the time the parental rights were terminated, L.E. had already been living with her grandparents for almost two years, L.E. is happy and comfortable in that setting, and contentious judicial proceedings would only harm her further. Recognizing the need for stability and permanency, *see In re Thomas H.*, 2005 ME 123, ¶ 30, 889 A.2d 297, the court concluded that termination was in the best interest of L.E., and there is competent evidence to support this finding. The court did not abuse its discretion in determining that termination was in the best interest of the child.

[¶ 17] In conclusion, the record supports the court's determination with clear and convincing evidence that both parents were unfit, and that it was in the best interest of L.E. for the court to terminate parental rights and grant the adoption petition.

The entry is:

Judgment affirmed.