MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2017 ME 172
Docket:        And-17-148
Submitted
  On Briefs:   July 19, 2017
Decided:       August 1, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## IN RE JOSEPH V.

PER CURIAM

[¶1]  The parents of Joseph V. appeal from a judgment of the District Court (Lewiston, *Dow, J.*) terminating their parental rights to the child pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(b)(i)-(ii) (2016). Specifically, they allege that there is insufficient evidence in the record to support the court's finding of parental unfitness by clear and convincing evidence. *See id.* § 4055(1)(B)(2)(b)(i)-(ii). They also argue that the court abused its discretion in concluding that termination of their parental rights was in the child's best interest. *See id.* § 4055(1)(B)(2)(a). We affirm the judgment.

[¶2]  After a two-day hearing, the court issued a judgment terminating the parents' rights to the child upon finding, inter alia, that the parents are unwilling or unable to take responsibility for the child or protect him from jeopardy within a time which is reasonably calculated to meet his needs. *See*

*id* § 4055(1)(B)(2)(b)(i)-(ii).   In its written judgment, the court found the following facts, which are supported by competent record evidence.  *See In re Charles G.*, 2001 ME 3, ¶ 5, 763 A.2d 1163.

> The parents' unwillingness or inability to follow through with things they acknowledge they need to do was a recurring theme across the spectrum of evidence presented by the Department and the [guardian ad litem].  The Court finds that the parents each failed to attend two CODE evaluation sessions. . . . The parents usually failed to bring diapers and wipes to the visits.  They often failed to bring toys and activities to the visits.  They failed to get [the child] evaluated by CDS when he was still in their home.
>
> . . . .
>
> [The child] spent his first 26 months, prior to his removal in April, 2015, without much opportunity to walk.  Due in large part to the squalor and dangerous conditions in the parents' home, [the child] spent most of his time in a Pack & Play playpen, then in the gated living room, where there was a mattress and a television.
>
> [The child] needs [physical therapy] due to his foot-ankle musculoskeletal alignment, poor muscle tone, and poor core strength.  He favors his left side.  The physical therapy helps him to build both his stationary and locomotion skills as well as his strength.  He sees [a physical therapist] at Rumford Hospital once per week.  For many months, the reunification effort has included the expectation that the parents 'attend appointments and or meet with providers' . . . .  There have been 34 [physical therapy] sessions since then.  The father has attended 17 sessions; the mother has attended 7 sessions. . . .
>
> Beyond mere showing up, there is a lack of follow-through that is well-established. . . .

[¶3]   The court's findings detailed above illustrate the parents' unwillingness or inability to follow through with the services the child requires to meet his most basic needs.  *See In re Jeffrey E.*, 557 A.2d 954, 956 (Me. 1989) ("In order for a court to take into account the special medical needs of a child, a present medical emergency need not exist, nor does such a medical emergency have to be imminent or even certain to recur.").  Given these and other factual findings, the court could reasonably have been persuaded that the factual bases supporting its finding of parental unfitness as to both parents were proved to be highly probable.  *See In re Michaela C.*, 2002 ME 159, ¶ 17, 809 A.2d 1245.

[¶4]   The parents also contend that the court abused its discretion in concluding that termination of their parental rights was in the child's best interest.  22 M.R.S. § 4055(1)(B)(2)(a), (2) (2016); *In re Thomas H.*, 2005 ME 123, ¶ 16, 889 A.2d 297.  Regarding his best interest, the court noted that:

> . . . In addition, [the child] is well-bonded and attached with his foster parents . . . with whom he has lived for his entire stay in foster care. . . .  [The child] has made tremendous strides in their care.  [The child] benefits from the attention and support of the foster parents' extended families, who live in and around Rumford.  The [foster parents] are very good at requiring [the child] to do his physical therapy exercises, at treating his asthma, and meeting all of his needs.  They are good advocates for him.

4

Viewing these facts "and the weight to be given them[] through the trial court's lens," it cannot be said that the court's conclusion that termination of the parents' rights to the child constituted an abuse of discretion. *In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260 (quotation marks omitted); *see In re Jacob B.*, 2008 ME 168, ¶ 18, 959 A.2d 734 ("Many factors can combine to support a best interest determination . . . .").

The entry is:

Judgment affirmed.

---

Erika Bristol, Esq., Lewiston, for appellant mother

Jason R. Ranger, Esq, Lewiston, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2014-50
FOR CLERK REFERENCE ONLY