MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 201
Docket:        Cum-17-150
Submitted
  On Briefs:   September 27, 2017
Decided:       October 5, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

IN RE NOAH B.


PER CURIAM

[¶1]  The mother of Noah B. appeals from a judgment of the District Court (Portland, *Eggert, J.*) terminating her parental rights to Noah pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii) (2016).[1]  She challenges the sufficiency of the evidence to support the judgment and the court's discretionary determination of the child's best interest.  Because the evidence supports the court's findings and discretionary determination, we affirm the judgment.

[¶2]  Based on competent evidence in the record, the court found, by clear and convincing evidence, that the mother is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time that is reasonably calculated to meet his needs and that

---

[1]  The child's father consented to the termination of his parental rights on March 6, 2017, and is not a party to this appeal.

2

she is unwilling or unable to take responsibility for the child within a time reasonably calculated to meet his needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *In re Cameron B.,* 2017 ME 18, ¶ 10, 154 A.3d 1199. The court also found that termination of the mother's parental rights is in the child's best interest. *See* 22 M.R.S. § 4055 (1)(B)(2)(a); *In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199. The court based its findings of parental unfitness and its determination of the child's best interest on the following findings of fact:

> [The mother] has previously had her parental rights to four children terminated . . . .

> In this case, on February 3, 2016, [the child] was . . . found to have petechial bruising on the right side of his face . . . .

> When asked about the injuries, [the mother] first blamed the father for inflicting them. Once confronted with evidence that the father was not available to inflict the injuries at the time they were inflicted, she admitted that she had been the one who inflicted them. As a result of the injuries, a Preliminary Protection Order was entered, and subsequently a Jeopardy Order was entered. A Rehabilitation and Reunification plan was put in place, and [the mother] began to make good progress with that plan. Because of the progress [the mother] was allowed weekly unsupervised visits with [the child] . . . . After the third such visit [the child] returned to his foster home with bruises on his arm. . . .

> Again [the mother] was asked about the bruises and denied that she had inflicted them. . . . [The child] was in her care at a time when the injuries were most likely to have occurred. [The child] told his foster mother that his mother had done it . . . . The

Court finds that [the mother] again struck [the child] even when she was progressing on her rehabilitation and reunification plan.

. . . .

. . . This is the second time that [the child] has been removed from [the mother's] care and placed with foster parents. He should not have to go through this process again and needs to have permanency at this time.

. . . He is well bonded to the members of his foster family and needs to move on in that safe and stable family setting. . . .

[¶3] The court further found that the child's "physical conditions" and "cognitive challenges" make him incapable of "protecting himself from harm." The court found that the mother's "personality disorder with narcissistic and borderline traits and a history of antisocial features," characterized by "rigid" thinking, "low tolerance for stress," and a "lower ability to adapt to and react to novel situations," is "difficult to treat and may require extensive time to allow treatment to be effective." Due to the mother's condition, history of abuse, and the child's high needs, the court found that it could not "allow placement with [the mother], or even to move again to unsupervised visits given the risk that [the child] would again have an injury inflicted upon him." The court stated that it "does not know when [the mother] might . . . be considered a safe placement" and "there is no guarantee that . . . therapy will remediate [the mother's] problem, and it may take a long time, measured in

years, to find out if [therapy] has worked." Noting that "[t]ime is measured from [the child's] perspective," the court found that the mother—despite her effort and progress—remains incapable of providing adequate care for the child in a time reasonably calculated to meet his needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *In re Alexander D.*, 1998 ME 207, ¶ 18, 716 A.2d 222.

[¶4] Given these findings and the court's other specific findings of fact, all of which are supported by competent evidence in the record, the court did not err in its determination of unfitness nor did it err or abuse its discretion in determining that termination of the mother's parental rights, with a permanency plan of adoption, is in the child's best interest.[2] *See In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

---

[2] The mother also argues that the court erred because it considered the time the child spent in foster care in a previous child protection proceeding when making its best interest determination. The mother appears to argue that the court could only consider the child's time in foster care from the current proceeding when determining the child's best interest. In fact, far from constituting error, the applicable statute *requires* the court to consider such periods of separation when determining if terminating parental rights is in the child's best interest. *See* 22 M.R.S. § 4055(2) (2016) ("In deciding to terminate parental rights, the court shall consider the best interest of the child . . . including . . . periods of attachment and separation . . . ."); *see also In re Jacob B.*, 2008 ME 168, ¶ 14, 959 A.2d 734 ("In determining whether termination of parental rights is in the child's best interest, a court must consider many factors, including . . . periods of attachment and separation . . . ."). The court, therefore, did not err by considering the child's time in foster care from the previous proceeding—a period of separation from his mother brought about by her past physical abuse—when it determined that terminating the mother's parental rights, with a permanency plan of adoption, was in the child's best interest. *See In re Jacob B.*, 2008 ME 168, ¶¶ 12-14, 959 A.2d 734.

The entry is:

Judgment affirmed.

---

Zack M. Paakkonen, Esq., Portland Legal LLC, Portland, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2016-17
FOR CLERK REFERENCE ONLY