MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2018 ME 12
Docket:         And-17-360
Submitted
  On Briefs:    January 11, 2018
Decided:        January 23, 2018

Panel:          ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


IN RE ASANAH S.


PER CURIAM

[¶1]   The father of Asanah S. appeals from a judgment of the District

Court (Lewiston, *Lawrence, J.*) terminating his parental rights to Asanah

pursuant to 22 M.R.S. § 4055(1)(A)(1) and (B)(2)(a), (b)(i)-(iii) (2017).[1]   He

alleges that the court impermissibly relied on his imprisonment in finding

parental unfitness and argues that the court erred by determining that

terminating his parental rights was in the child's best interest.   Because the

evidence supports the court's findings and discretionary determination, we

affirm the judgment.

[¶2]   Based on competent evidence in the record, the court found, by

clear and convincing evidence, that the father is unwilling or unable to protect

the child from jeopardy and these circumstances are unlikely to change within

---

[1]  The child's mother consented to the termination of her parental rights on March 24, 2017, and is not a party to this appeal.

a time which is reasonably calculated to meet her needs, that the father is unwilling or unable to take responsibility for the child within a time reasonably calculated to meet her needs, and that the father abandoned the child. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(iii); *In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199. The court also determined that termination of the father's parental rights is in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a); *In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199. The court based its findings of parental unfitness and its determination of the child's best interest on the following findings of fact:

> [The father] has been incarcerated since October of 2010 for convictions on charges of Assault and Battery and being an Armed Career Criminal. He believes he will be incarcerated on these charges until 2020. . . . He is now 46 years old and has been incarcerated for about 20 years. The only time that [the father] actually has seen [the child] was one time in 2008. . . . [The father] acknowledged that he is unable to care for [the child] because of his incarceration.

> [The father] is aware that [the child] is living with [her maternal grandfather] and he believes it is beneficial for her to be living with him. . . . [He] asks the court to order a permanency guardianship with [the grandfather].

> . . . [The child] experienced trauma in the past and exhibited symptoms of PTSD and anxiety. . . . [The child] is grateful for her placement with [her grandfather]; she has a greater sense of security and stability because she feels safe with him and has no concerns that he will hurt her. [The grandfather's] boundaries

and discipline have been appropriate. For [the child], [the grandfather's] house equals home.

. . . [The child] does not recall ever meeting [the father] . . . .

. . . [The grandfather] testified that he is absolutely ready, willing and able to adopt [the child].

[¶3] The court explained that "[i]ncarceration is an important factor . . . to consider in termination proceedings," but that "it is not dispositive." It then outlined certain factors that a court should consider in a termination proceeding when a parent is incarcerated, including "the parent-child relationship before and after incarceration," the psychological effect of the incarceration on the child, and the parent's ability to fulfill his or her parental responsibilities while incarcerated. *See In re Alijah K.*, 2016 ME 137, ¶ 16, 147 A.3d 1159. With these factors in mind, the court found that the father "has failed to develop any parent-child relationship" with the child; the father "will be serving another three years in prison"; the child "does not know him"; and the child "has not had any contact with [the father's] family or built a relationship with them." Given these findings, the court found that the father was unfit and determined that terminating his parental rights is in the child's best interest.

[¶4]   The father relies on our decision in *In re Cody T.*, 2009 ME 95, ¶¶ 28–31, 979 A.2d 81, to argue that the court impermissibly terminated his parental rights by "primarily" relying on his incarceration.   The father also contends that the court erred in its best interest determination because "there was no evidence presented that [the child] would be harmed by maintaining a legal relationship with her Father."   He argues that the court should have awarded a permanent guardianship rather than terminating his parental rights.

[¶5]   The father is correct that "[a] parent's long-term incarceration, standing alone, does not provide grounds for the termination of parental rights," *Adoption of Hali D.*, 2009 ME 70, ¶ 2, 974 A.2d 916, but his arguments nonetheless fail in several respects.   First, the court did not base its unfitness findings or terminate the father's parental rights *solely* upon his incarceration. *See id.* ¶ 3.   The court's order indicates that it based its findings on a careful consideration of the child's need for stability and permanency and the father's relationship with the child—a relationship affected, at least in part, by the father's incarceration.   The father's arguments fail to recognize that "neither *In re Cody T.* nor any other authority gives a parent a 'pass' on parental responsibilities as a result of being incarcerated." *In re Alijah K.*, 2016 ME 137,

¶ 14, 147 A.3d 1159. "A parent who is unable to fulfill his parental responsibilities by virtue of being incarcerated is entitled to no more protection from the termination of his parental rights than a parent who is unable to fulfill his parental responsibilities as a result of other reasons." *Id.* Indeed, "a parent's incarceration is but one factor to be considered by a court faced with a termination petition, but it is *a factor*—a factor that may, in some cases, lead a court to terminate that parent's rights." *Id.* ¶ 16.

[¶6]  Here, the father acknowledges that he is incapable of caring for the child because of his incarceration.  Additionally, the father only met the child once, in 2008—when she was an infant—and has never "provide[d] a nurturing parental relationship." *Adoption of Hali D.*, 2009 ME 70, ¶ 2, 974 A.2d 916 (quotation marks omitted).  Since his incarceration in 2010, the father has failed to fulfill any of his "responsibilities as a parent," or establish any "longstanding parent-child relationship" with the child.  *In re Alijah K.*, 2016 ME 137, ¶¶ 16, 18, 147 A.3d 1159 (quotation marks omitted).  Contrary to the father's contentions, the record contains ample evidence to support the court's findings of parental unfitness.  *See In re K.M.*, 2015 ME 79, ¶¶ 9-10, 118 A.3d 812; 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(iii).

[¶7]  Second, the court was not required to find that a relationship with the father would harm the child before determining that termination of the father's parental rights with a permanency plan of adoption, rather than a permanency guardianship, is in the child's best interest.  *See In re Jacob B.*, 2008 ME 168, ¶ 17, 959 A.2d 734 ("Such a finding of prospective harm would have been difficult in a child abandonment case when there had been no parent-child relationship [and] such an affirmative negative finding is not necessary . . . .").  The court carefully considered the child's needs and competent evidence supports its finding that establishing a relationship with the father "would impede establishing permanency for [the child]."  Because "[a] permanency guardianship in this case would not have ensured certainty and stability for the child," *In re David W.*, 2010 ME 119, ¶ 10, 8 A.3d 673, and "instability and impermanency are contrary to the welfare of children," 22 M.R.S. § 4050 (2017), the court did not err or abuse its discretion by determining that termination of the father's parental rights, with a permanency plan of adoption, is in the child's best interest.  *See In re Thomas H.*, 2005 ME 123, ¶ 16, 889 A.2d 297.

The entry is:

Judgment affirmed.

Jeffrey S. Dolley, Esq., Lewiston, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2016-60
FOR CLERK REFERENCE ONLY