MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2018 ME 107
Docket:        Ken-18-66
Submitted
  On Briefs:  June 27, 2018
Decided:       July 26, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF RONALD W.

PER CURIAM

[¶1]  Ronald W. appeals from a judgment of the District Court (Augusta, *Nale, J.*) terminating his parental rights to his child pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(ii) (2017).[1]  He challenges the adequacy of the court's findings to inform the parties of the basis for the judgment as well as the sufficiency of the evidence supporting the court's finding of parental unfitness and the court's discretionary determination that termination is in the best interest of the child.  *See id.* § 4055(1)(B)(2) (2017).  After reviewing the record, we conclude that the court met its obligation to issue findings that are adequate to inform the parties of the basis for the judgment and to allow for effective appellate review, the evidence supports the court's factual findings,

---

[1]  On January 22, 2018, the District Court (Augusta, *Nale, J.*) entered a judgment terminating the mother's parental rights contingent on the termination of the father's parental rights after the mother consented in writing to the termination of her rights.  *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(1) (2017). The mother does not join in this appeal.

2

and the court did not exceed its discretion in determining that termination of the father's parental rights is in the child's best interest.  Accordingly, we affirm the judgment.

[¶2]  As a preliminary matter, the father contends that the court erred by failing to make a finding of parental unfitness as required by 22 M.R.S. § 4055(1)(B)(2)(b), and, to the extent that the court made such a finding, the court was unclear regarding which statutory ground of unfitness formed the basis for its decision.  Contrary to the father's contention, the court expressly found parental unfitness.  The court cited to section 4055(1)(B)(2)(b), listed the statutory definitions for parental unfitness, and explained that the Department was required to prove unfitness by clear and convincing evidence pursuant to at least one of those statutory definitions.  Under the heading "UNFITNESS AS TO FATHER," the court stated that it "must look at whether [the father] will be able to take responsibility for [the child] within a time reasonably calculated to meet [her] needs, and he cannot."

[¶3]  From this language, it is evident that the court found that the father was unfit pursuant to section 4055(1)(B)(2)(b)(ii), which provides that parental unfitness may be found when "[t]he parent has been unwilling or unable to take responsibility for the child within a time which is reasonably

calculated to meet the child's needs." That the court made a finding of parental unfitness pursuant to section 4055(1)(B)(2)(b)(ii) is further demonstrated by its specific findings of fact. These findings and conclusions meet the requirement imposed on a court, *see* M.R. Civ.P. 52(a), to issue findings and conclusions that are sufficient to "inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review." *Young v. Young*, 2015 ME 89, ¶ 10, 120 A.3d 106.

[¶4] The court based its finding of parental unfitness and its determination of the child's best interest on the following findings of fact:

> [The father's] drug use, criminal history, . . . and long-term incarceration are longstanding and significant.
>
> . . . .
>
> The court finds that [the father] has not had consistent or meaningful contact with his [child] throughout her life. [The father] has either been incarcerated or living apart from [the child] . . . for extended periods of time.
>
> [The child] has not seen her father for over 20 months. [The father's] earliest release date is projected to be June of 2019. Approximately 17 more months. The guardian reports that during her visit with [the child] that [the child] has never made mention of her father. . . . Each month is a very long time in the life of a child this age.
>
> The court finds that [the father] failed to initiate any contact with [the Department of Health and Human Services] regarding his [child] during the first 10 months [that she was in the custody of

the Department during] his incarceration for violating his probation. The one contact that he had was a letter expressing concern for [the child]. After that contact with [the Department], there wasn't any more. He made no request of [the] case worker to see his [child].

The court finds that [the father] is unable to meet the most basic needs of his [child]. This situation will not change in the next 17 months. It has not changed since May 2, 2016. The court finds that this father's parental rights are not being terminated *solely* upon his incarceration. . . .

The court heard testimony from [the father] regarding the steps he is taking to better himself while he is incarcerated. [The father] offered no timeline as to when he feels he will be a better person. The court understands that [the father] does not want to lose his [child]. The court understands that [the father] loves his [child]. Love alone is not enough.

. . . .

. . . [The father] remains incarcerated [after being] initially incarcerated on May 2, 2016. He is not in a position now or anytime soon to be able to care for the immediate needs of his [child].

. . . .

. . . The court carefully listened to and considered all that [the father] says he is doing to help him be a better person. [The father] believes he has "the Tools" to take care of his [child]. The court disagrees. The court finds that [the child] is in immediate need of a home which will provide safety, comfort, happiness, promise, and the love she so desperately needs and deserves—NOW. The time has come for this [child] to have stability in her young life.

[¶5]  On appeal, the father challenges the sufficiency of the evidence supporting the court's factual findings and discretionary determinations,

primarily arguing that the court impermissibly relied on the father's incarceration to find parental unfitness and the child's need for permanency in determining the child's best interest.

[¶6] We review the trial court's factual findings for clear error and its ultimate determination to terminate parental rights for an abuse of discretion. *In re Child of James R.*, 2018 ME 50, ¶¶ 11, 14, 182 A.3d 1252.

[¶7] Contrary to the father's contention, the court's material findings are supported by competent evidence in the record,[2] and the court did not impermissibly consider the father's incarceration in reaching its parental unfitness determination. The court stated that it may not and, in fact, did not terminate the father's rights based solely on his incarceration. The court stated that incarceration was a factor, however, and that it "must consider whether the length of a parent's incarceration will prevent the parent from . . . taking

---

[2] The court's finding on one issue was not supported by the evidence. Several times in the judgment, the court referred to domestic violence issues affecting the father. There is no support in the record for a finding that the father engaged in acts of domestic violence. Although the guardian ad litem's reports include several repeated references to the Department's involvement with the mother regarding domestic violence, the jeopardy order issued in February 2017—an order judicially noticed by the court—contains a finding that the accounts were "unsubstantiated."

A factual error in a child protection order is harmless "if it is highly probable that the error did not prejudice the parents or contribute to the result in the case." *In re Caleb M.*, 2017 ME 66, ¶ 25, 159 A.3d 345; *see* M.R. Civ. P. 61. Here, it is evident that the court's unsupported finding regarding domestic violence was not important to the court's analysis. Rather, as we discuss in the text, the focus of the court's unfitness and best interest determinations was the father's overall lack of present and future capacity and preparedness to care for the child and the father's failure to maintain a relationship with child to the degree that he could have.

6

responsibility for the child within a time reasonably calculated to meet the child's needs." The court found that the father had been unable to meet the child's most basic needs since becoming incarcerated and that the situation would not change for nearly a year and a half, until June 2019, when the father was expected to be released from incarceration.

[¶8] Evidence admitted at the termination hearing supports the court's finding of parental unfitness. At the termination hearing, the Department established that the father has been incarcerated since May 2016 for violating his probation on a 2010 conviction for robbery committed against the child's mother. The father failed to take responsibility for his actions, describing his probation violation as "an impossible situation" because his only "choices" were either reporting to his probation officer and failing a drug test or failing to report to the probation officer. The father testified that before deciding not to report to his probation officer, he considered that he could be incarcerated for a significant period of time but "went ahead with it anyway."

[¶9] The Department also established—and the father admitted—that he contacted the Department only once during the twenty months that the child had been in the custody of the Department. The court found, with support in the record, that the father had made no effort to arrange visitation through the

Department. Although the father expressed to the guardian ad litem that he wished for the child to have a relationship with his family, the father did not make any arrangements for his family to visit with or care for the child. In fact, the father's testimony at trial was equivocal on this issue. The paternal grandfather testified that he was willing to become a caretaker for the child for the remainder of the father's sentence, but the father testified that, although the paternal grandfather would be "a good alternative," he "[doesn't] mind where [the child] is now."

[¶10] Although the father points to evidence that he presented suggesting that he had a close relationship with the child before his incarceration, the father has failed to maintain that parent-child relationship since becoming incarcerated. *See In re Cody T.*, 2009 ME 95, ¶ 28, 979 A.2d 81 ("In considering the parental fitness of an incarcerated parent, the court's focus is not on the usual parental responsibility for physical care and support of a child, but upon the parent's responsibility or capacity to provide a nurturing parental relationship using the means available."); *see also In re Alijah K.*, 2016 ME 137, ¶ 14, 147 A.3d 1159 (stating that a parent does not receive a "pass" on his parental responsibilities as a result of being incarcerated). The court did not err in finding that the father was unfit.

[¶11]  The father also contends that the court placed too much emphasis on permanency in finding parental unfitness and in determining the child's best interest.  Contrary to the father's contention, the court's order indicates that it carefully and appropriately considered the child's needs for stability and permanency, which were affected by the father's long-term incarceration and the father's failure to plan for the child's care upon his release.  The court properly noted the Legislature's policy in favor of permanency and stated that the time within which a parent must take responsibility for the child is measured from the child's perspective.  *See* 22 M.R.S. §§ 4050, 4055(1)(B)(2)(b), (2) (2017).  Taking into consideration the father's efforts to "make himself a better person," the court found, based on competent evidence in the record, that the father did not have the "tools" to take responsibility for the child and that the father "offered no timeline" for when he would be able to do so.  The weight and credibility of the father's testimony that he has participated in substance abuse counseling and parenting classes while incarcerated was for the fact-finder's determination.  *See In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199.

[¶12]  Again, the court's findings are supported by the evidence admitted at trial.  At the time of the hearing, the child had already been in the custody of

the Department for twenty months, and the father was not expected to be released from incarceration for another seventeen months. As the court noted, "[e]ach month is a very long time in the life of a child this age." When asked if he was prepared and capable of taking care of the child upon his release, the father testified, "Capable, yes. Prepared, maybe, you know?" Regarding his plans for taking care of the child, the father testified that there should be "guidelines" for him and that taking care of the child was not something to "just jump[ ] right into." When asked how long he thought it would take before he could take full responsibility for the child, the father testified, "Who knows?"

[¶13] The court did not err or abuse its discretion by considering the child's needs for stability and permanency in finding parental unfitness and in determining that termination of the father's parental rights was in the child's best interest.[3] *See In re Thomas H.*, 2005 ME 123, ¶¶ 22-34, 889 A.2d 297; *see also In re Asanah S.*, 2018 ME 12, ¶¶ 5-6, 177 A.3d 1273; *In re Alijah K.*, 2016 ME 137, ¶ 14, 147 A.3d 1159.

---

[3] The father also argues that the court erred by failing to make a finding that the child would be harmed if she were returned to her father's care and that the court abused its discretion by terminating the father's parental rights when the permanency plan for the child was unsettled. We disagree. First, the court was not required to make a finding of prospective harm before terminating the father's parental rights. *See In re Asanah S.*, 2018 ME 12, ¶ 7, 177 A.3d 1273; *In re Jacob B.*, 2008 ME 168, ¶ 17, 959 A.2d 734. Second, the court was not required to know which of the prospective adoptive families would be the child's permanent placement before determining that termination of the father's parental rights was in the child's best interest. *See In re Kenneth S.*, 2017 ME 45, ¶ 6, 157 A.3d 244; *cf. In re David W.*, 2010 ME 119, ¶¶ 1, 4-5, 8-10, 8 A.3d 673.

The entry is:

Judgment affirmed.

---

Elizabeth S. Gray, Esq., The Law Office of Elizabeth S. Gray, Esq., Augusta, for appellant father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Gen. Atty., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Augusta District Court docket number PC-2016-76
FOR CLERK REFERENCE ONLY