MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 145
Docket:       And-19-138
Submitted
 On Briefs:   September 10, 2019
Decided:      September 17, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

IN RE CHILD OF KIMBERLY K.


PER CURIAM

[¶1]  Kimberly K. appeals from a judgment of the District Court (Lewiston, *Martin, J.*) terminating her parental rights to her child, as does the child's father.  The father challenges the sufficiency of the evidence with respect to the court's determination that he is unfit within the meaning of 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii), (iv) (2018), and both parents contend that the court erred by determining that the termination of their parental rights is in the child's best interest, *see* 22 M.R.S. § 4055(1)(B)(2)(a) (2018).  We affirm the judgment.

I.  BACKGROUND

[¶2]  The following facts, which are supported by the evidence, are drawn from the court's judgment and the procedural record.  *See In re Children of Nicole M.*, 2018 ME 75, ¶ 2, 187 A.3d 1.  On December 7, 2016, the Department of Health and Human Services filed a petition for a child protection order as to

both parents, alleging that the mother had an untreated substance use disorder, was homeless, and was leaving the child alone for long periods of time with people who are not well-known to the child and are not considered by the Department to be safe caregivers. *See* 22 M.R.S. § 4032 (2018). The petition further alleged that the father was unable to care for the child because he was incarcerated.

[¶3] On April 11, 2017, the court entered an agreed-to jeopardy order, granting custody to the Department and maintaining the child's placement with his paternal grandmother. *See* 22 M.R.S. § 4035 (2018). The court entered agreed-to judicial review and permanency planning orders on August 17, 2017 (*Beliveau, J.*); January 11, 2018 (*Dow, J.*); April 12, 2018 (*Beliveau, J.*); August 16, 2018 (*Ham-Thompson, J.*); and December 13, 2018 (*Dow, J.*), maintaining custody of the child with the Department.

[¶4] Meanwhile, in October 2018, the Department filed a petition for the termination of both parents' rights to their child. *See* 22 M.R.S. § 4052 (2018). Following a hearing held on the petition, *see* 22 M.R.S. § 4054 (2018), the court entered a judgment granting the petition to terminate the parents' rights. The court based its decision on the following findings of fact, all of which are

supported by competent evidence in the record.  *See In re Child of Domenick B.*,

2018 ME 158, ¶ 5, 197 A.3d 1076.

> [The mother's] drug use is longstanding and significant.  Her drug[s] of choice [have] been cocaine and suboxone.  She has lived with her ex-boyfriend's mother for the last year.  Her drug abuse has landed her in jail on several occasions and she is now facing her third probation violation, which could result in a maximum 18-month jail sentence. . . .

> The Jeopardy Order dated April 7, 2017, required [the mother] to participate actively and consistently in substance abuse treatment with a mental health component; participate in a follow-up interview with Family Treatment Drug Court (FTDC); to not use or possess alcohol, illicit drugs, or prescription drugs except when used as prescribed by a qualified health professional; subject to random drug and alcohol testing; participate in a parenting education program; be involved in [the child's] appointments; sign all necessary releases; maintain safe and stable housing free from domestic violence, drugs and alcohol; and refrain from any/all criminal involvements and abide by the terms of probation conditions.  Over the last 24 months, [the mother] has failed to do any of the above required conditions.  During this case she had promised to enroll in FTDC but failed to do so.  FTDC case manager and DHHS caseworkers have reached out to her many times to enroll in FTDC; although she acknowledges her need, she has failed to enroll.  While she did complete an intensive outpatient program (IOP) a few years ago, the evidence presented reveals that she has never engaged in services throughout this case and is currently not in any services.  Her visits with [the child] have been intermittent at best.  For that reason, the visits were canceled. . . .

> [The mother] admits not being in a position to parent [the child] at this time and suggests she would need additional time to complete her sentence, obtain housing, get into the FTDC and substance abuse counseling, attend another IOP and gain employment.  She expects this would take another 19 months.

Despite her love for [the child], her addiction and incarceration have significantly impacted her ability to protect [the child] from jeopardy or to take responsibility for him within a time calculated to meet [the child's] needs.

. . . .

The father's drug use has also been long-standing and significant. Although he's been incarcerated the last 6 years, he began abusing substances (mainly opiates) at age 14 up until his incarceration in 2014. He actually missed [the child's] birth due to his incarceration. Once released, and despite [the child's] existence, he continued to abuse substances which contributed to his burglary and aggravated burglary convictions. On August 29, 2014, the father was sentenced to 7 years and 182 days in prison—[the child] was only a year old. His current release date is May of 2020. His release could have been sooner but for the numerous in-prison write-ups that extended his sentence 3 to 4 months. The father is currently waiting to see if he'll be charged for assault due to a recent incident in prison which could extend his release date even further past May 2020.

[T]he father has done some beneficial services while in Prison: he has six (6) credits remaining to obtain an associate's degree in Liberal Arts; he engaged in an anger management group and has been involved in a "New Freedom Group" at the prison; engaged in substance abuse and mental health counseling that met once per month for the last two years; and he's prepared to enroll in the prison's 18-month mental health and substance abuse treatment program offered to inmates who are within 18 months of their prospective release date. He's also had open contact visits with [the child] at least two times per year at the prison along with phone contact throughout his incarceration. Despite all of this, the father has [over a year left] in prison.

. . . .

[W]hile the court is mindful of the efforts the father has made to rehabilitate and improve himself while incarcerated, it simply is not enough. Likewise, the mother has done nothing to engage in services. The parents' reality is that incarceration has and will continue to render them incapable of taking responsibility for [the child] within a time reasonably calculated to meet [the child's] needs . . . .

. . . .

[The child] has [an attachment disorder]. The GAL testified that it would not be in [the child's] best interest to keep open the continued possibility of change, that he needs permanency, and that termination of parental rights is in [the child's] best interest. The [c]ourt finds that although [the child's grandmother] cannot currently commit to adoption—she would agree to continue to care and support [the child] through a permanency guardianship while ensuring absolute permanency for [the child] . . . .

[¶5] The court established the permanency plan for the child, determining that it is in the child's best interest to terminate the parents' rights and proceed with adoption or a permanency guardianship with the child's grandmother. Following the issuance of the judgment terminating their parental rights, both parents timely appealed. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶6] The father challenges the sufficiency of the evidence supporting the court's unfitness and best interest determinations, and both parents argue that the court erred by determining that termination of their parental rights was in

the child's best interest after a permanency guardianship was found to be appropriate. "We review the court's factual findings of unfitness and best interest for clear error, and we will uphold those findings if there is any competent record evidence to support them. We review the court's ultimate determination of best interest for an abuse of discretion." *In re Child of Rebecca J.*, 2019 ME 119, ¶ 5, --- A.3d --- (citation omitted).

A.      Parental Unfitness

[¶7]  "Before a court may terminate a parent's parental rights, the court must find at least one ground of parental unfitness." *In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199; *see* 22 M.R.S. § 4055(1)(B)(2)(b) (2018). Although, as we have explicitly recognized, "[a] parent's long-term incarceration, standing alone, does not provide grounds for the termination of parental rights," *Adoption of Hali D.*, 2009 ME 70, ¶ 2, 974 A.2d 916, "[a] parent who is unable to fulfill his parental responsibilities by virtue of being incarcerated is entitled to no more protection from the termination of his parental rights than a parent who is unable to fulfill his parental responsibilities as a result of other reasons," *In re Alijah K.*, 2016 ME 137, ¶ 14, 147 A.3d 1159. "Respecting the strong policies in favor of permanency, a court must consider whether the length of a parent's incarceration will prevent the parent from

protecting the child from jeopardy or taking responsibility for the child within a time reasonably calculated to meet the child's needs." *Adoption of Isabelle T.*, 2017 ME 220, ¶ 34, 175 A.3d 639; *see* 22 M.R.S. § 4055(1)(B)(2)(b)(i), (ii).

[¶8]  In this case, the father is currently in prison—the court found that the father had been incarcerated for the last six years and that his earliest possible release date is May 2020.  The court acknowledged that the father had participated in some beneficial services while incarcerated and had engaged in in-person and phone contact with the child throughout his sentence.  However, the court found that the length of the father's incarceration rendered him incapable of taking responsibility for the child within a time reasonably calculated to meet the child's needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(ii); *In re Hannah S.*, 2016 ME 32, ¶ 10, 133 A.3d 590.  The court credited the testimony of the Department's caseworker and the guardian ad litem that the child had a significant need for permanency, and the case has been pending since the child was four years old—a period of over two years.

[¶9]  On this record, the court did not clearly err by finding that the father is unlikely to become fit within a time reasonably calculated to meet the child's needs.  *See In re Children of Anthony M.*, 2018 ME 146, ¶ 11, 195 A.3d 1229.  Having so determined, we need not consider whether alternative grounds for

terminating the father's parental rights were supported by clear and convincing evidence. *See* 22 M.R.S. § 4055(1)(B)(2)(b); *In re Randy Scott B.*, 511 A.2d 450, 455 (Me. 1986). Although the mother has not challenged the court's determination that she is parentally unfit, we further conclude that there is evidence in the record to support the court's findings, by clear and convincing evidence, that at least one ground of unfitness exists as to the mother. *See In re Child of Shayla S.*, 2019 ME 68, ¶ 9, 207 A.3d 1207; *In re Kenneth S.*, 2017 ME 45, ¶ 9, 157 A.3d 244.

B.    Child's Best Interest

[¶10]   "Once a court determines that a parent is unfit, it must also determine whether termination of that parent's parental rights is in the child's best interest." *In re Child of Domenick B.*, 2018 ME 158, ¶ 9, 197 A.3d 1076; *see* 22 M.R.S. § 4055(1)(B)(2)(a). The court in this matter found that either adoption or a permanency guardianship after termination was in the child's best interest.

[¶11]   The parents first argue that there is insufficient evidence to support the court's best interest finding because each of the parents has a relationship with the child, and, more specifically, because the record does not establish how preserving the parental relationships would be detrimental to

the child's sense of permanency. However, just because a parent "has a relationship with the child that is not disruptive does not mean that termination cannot be in the child's best interest." *In re Michaela C.*, 2002 ME 159, ¶ 26, 809 A.2d 1245; *see In re Child of Ronald W.*, 2018 ME 107, ¶ 13 n.3, 190 A.3d 1029 (noting that the court is not required to find that a relationship with a parent would be harmful to the child before determining that termination is in the child's best interest); *In re Asanah S.*, 2018 ME 12, ¶ 7, 177 A.3d 1273; *Adoption of Hali D.*, 2009 ME 70, ¶ 1 n.1, 974 A.2d 916; *In re Jacob B.*, 2008 ME 168, ¶ 17, 959 A.2d 734. Indeed, "[m]any factors can combine to support a best interest determination, even when an affirmative negative finding regarding a continued relationship is lacking." *In re Jacob B.*, 2008 ME 168, ¶ 18, 959 A.2d 734.

[¶12]   Finally, the parents challenge the court's determination that termination is in the child's best interest given the court's determination that the permanency plan for the child is adoption or a permanency guardianship with the child's grandmother. They argue that termination in this instance is unnecessary and does not promote the goal of permanency for the child.

[¶13]   We recently held that "a permanency guardianship is not necessarily incompatible with a court's determination that a termination of

parental rights is in the child's best interest." *In re Children of Nicole M.*, 2018 ME 75, ¶ 24, 187 A.3d 1. In *Nicole M.*, we held that the trial court appropriately designated a post-termination permanency plan that would ensure that the children would remain with their grandmother. *Id.* ¶ 25. Although the children could continue to live with their grandmother without the court terminating the parents' rights, we explained that, when a parent's rights have not been terminated, "the parent is statutorily authorized to petition the court not only to determine rights of contact but even to terminate the permanency guardianship itself." *Id.* ¶ 26. Thus, termination in such circumstances attenuates the prospect of impermanence in the permanency guardianship. *See id.*

[¶14] Here, as in *Nicole M.*, the court stated that its goals were to ensure that the child would have the permanence that comes with a termination of parental bonds and would be placed with the grandmother. *See id.* ¶ 27. The court credited the testimony of the guardian ad litem that it would not be in the child's best interest to keep open the continued possibility of change. With support in the record, the court found that the child has an attachment disorder and that the child's grandmother has agreed to continue to care for and support the child through a permanency guardianship to ensure permanency for the

child.  These findings are not clearly erroneous, and the court did not err or abuse its discretion in determining that termination of the parents' parental rights would ensure permanency for the child and would be in the child's best interest.  *See id.* ¶ 26; *cf. In re Asanah S.*, 2018 ME 12, ¶ 7, 177 A.3d 1273.

The entry is:

Judgment affirmed.

---

Jeffrey S. Dolley, Esq., Lewiston, for appellant mother

Richard Charest, Esq., Lewiston, for appellant father

Aaron M. Frey, Attorney General, and Zack Paakkonen, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2016-80
FOR CLERK REFERENCE ONLY