MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 66
Docket:      Aro-19-509
Submitted
  On Briefs:  May 4, 2020
Decided:     May 12, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

## IN RE CHILD OF STACY H.

PER CURIAM

[¶1]  Stacy H. appeals from a judgment of the District Court (Presque Isle, *Nelson, J.*) terminating her parental rights to her child.  The mother argues that there were insufficient findings and evidence to support the court's determination that termination of her parental rights was in the child's best interest.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The Department of Health and Human Services initiated child protection proceedings against the mother and father of this child by filing a child protection petition on December 12, 2017, alleging that the then eighteen-month-old child had been taken to the hospital for possibly ingesting the mother's prescribed medication.[1]  *See* 22 M.R.S. § 4032 (2020).  The

---

[1] The Department did not initially seek a preliminary protection order because it had reached an agreement with the mother for her to retain custody of the child with a safety plan in place.

Department also alleged that the mother had a long history of substance abuse issues, placing the child at risk of exposure to drugs, drug paraphernalia, and dangerous individuals; had exposed the child to domestic violence; and had neglected her older child.[2]

[¶3]  On March 2, 2018, the court (*O'Mara, J.*) entered a jeopardy order with the mother's agreement, finding jeopardy to the child from the mother's struggles with drug addiction, her use of methamphetamine and amphetamines on multiple occasions during the course of the child protection proceedings, the threat of neglect to the child, and the child's exposure to domestic violence. *See* 22 M.R.S. § 4035 (2020).

[¶4]  The Department sought a preliminary protection order on August 10, 2018, alleging that the mother was selling drugs out of her home, was not participating in substance abuse counseling, was exposing the child to potential abuse by visitors, had been overheard yelling at the child, and had relapsed on methamphetamine.  *See* 22 M.R.S. § 4034(1) (2020).  The court (*Nelson, J.*) entered a preliminary protection order that day, placing the child in the Department's custody.  *See* 22 M.R.S. § 4034(2) (2020).  The mother waived

---

[2] The court later terminated the father's parental rights.  Because the father does not appeal from that judgment, we discuss the facts and procedure only as they relate to the mother.

her opportunity for a summary preliminary hearing. *See* 22 M.R.S. § 4034(4) (2020).

[¶5] A year later, on August 22, 2019, the Department petitioned for the termination of the mother's parental rights. *See* 22 M.R.S. § 4052 (2020). After a two-day testimonial hearing, by judgment dated December 5, 2019, the court found the following facts by clear and convincing evidence.[3] *See In re Child of Olivia F.*, 2019 ME 149, ¶ 3, 217 A.3d 1106.

> This case involves chronic substance abuse problems . . . and significant domestic violence issues in the home. . . . A domestic violence incident prompted Department intervention with the family in February of 2017 . . . .
>
> Mother has had a drug problem since she was a teenager. She made some progress in her late twenties . . . . That progress came to an end when she . . . began using bath salts approximately six years ago. This caused her life . . . to completely fall apart. She has been . . . struggling with her addiction and mental health issues since that time.
>
> After attending an intensive inpatient treatment program with [the child] in the spring of 2018 following the entry of the Jeopardy Order, mother returned to the community and again was using illegal drugs. She admitted to using methamphetamine while [the child] was in her care in August of 2018. . . . Rather than take responsibility for her slip-ups, mother blamed the Department and her providers.

---

[3] The court entered judicial review orders on July 6, 2018 (*Soucy, J.*); October 25, 2018 (*Nelson, J.*); and February 28, 2019, maintaining the Department's custody of the child and establishing a permanency plan of reunification with the mother. By a judicial review order entered on December 18, 2019, the court established a permanency plan of adoption for the child.

[M]other completed the intensive outpatient program in February of 2019. It does not appear that she gained any insight from the program. In May of 2019, mother again was abusing prescription medication that she allegedly located among her things when she was moving to a new apartment. In addition, mother was using methamphetamine again as well. She was completely overwhelmed, even though [the child] was not in her care. She again blamed her providers for failing *her*.

Despite the identification early on in the case of a significant need for mother being mental health counseling, mother did virtually nothing to follow up and engage in mental health treatment services. . . . Without proper attention to, and treatment of, her mental health issues, which has not occurred to this point, mother will be unable to effectively parent [the child] due to the co-occurrence of her substance abuse disorder and mental health diagnoses.

When the case hit its most critical stage, with the prospect of a termination of parental rights looming, mother failed to put forth much effort at attending to her substance abuse treatment needs, attending only a few sessions. At the hearing, her current substance abuse treatment provider indicated that she was again in the intensive outpatient treatment program, which is a program for the *beginning of the recovery process*. There were many excuses for the lack of participation presented at the hearing, none of them credible.

Mother has exhibited a lack of understanding of how her mental health and substance abuse issues have caused her much misery in her life. She takes very little, if any responsibility for the way her life is now. Whenever she is overwhelmed, which happens easily, she resorts to abusing substances. . . .

. . . .

. . . The court finds that permanency is important for [the child]. She is dependent on others for her care and must have consistent care.

. . . [The mother is] not able to effectively manage [her] own care, much less care for this child. [Her] lack of success in addressing the domestic violence issues, mental health issues, and substance abuse issues as well as [her] chronic instability make it unlikely that [she] will be able to provide the child permanency at any time in the foreseeable future, if ever. In light of the child's age and her need for stability, predictability and adequate care, she simply cannot wait to see if at some point in the future [the mother] makes sufficient progress in dealing with [her] issues to consider moving forward with reunification. It is in [the child's] best interest that she be provided that stability, predictability and adequate care now by way of a termination of her [mother's] parental rights.

The delay in this case has had a negative effect on the child. She has been in limbo while her [mother has] been given time to work on [her] own issues. . . . The child has been living with her paternal aunt since the spring of 2019. The child's . . . behaviors have improved in her new placement. Her aunt has been a tremendous resource for the child and actively advocates for her needs. The child is thriving in her aunt's home. The stability that a termination of parental rights would provide is in the child's best interest so that she can achieve permanence.

[¶6] Based on these findings, the court terminated the mother's parental rights to the child on the grounds that she is unwilling or unable to protect the child from jeopardy and unwilling or unable to take responsibility for the child within a time reasonably calculated to meet the child's needs, and that termination is in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a),

6

(b)(i), (ii) (2020). The mother timely appeals. *See* 22 M.R.S. § 4006 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶7] The mother challenges the court's finding that termination of her parental rights was in the best interest of the child. We review for clear error the court's factual findings supporting its best interest determination, and we will not disturb those findings if there is any competent evidence in the record to support them. *In re Child of Olivia F.*, 2019 ME 149, ¶ 5, 217 A.3d 1106. We review the court's ultimate best interest determination for an abuse of discretion. *Id.*

[¶8] Contrary to the mother's contention, the court adequately considered the child's best interest when it terminated the mother's parental rights. The statute requires the court to consider "the best interest of the child, the needs of the child, including the child's age, the child's attachments to relevant persons, periods of attachments and separation, the child's ability to integrate into a substitute placement or back into the parent's home and the child's physical and emotional needs." 22 M.R.S. § 4055(1)(B)(2)(a), (2) (2020). It does not require the court to issue written findings addressing every component of a best interest analysis, *see In re Jacob B.*, 2008 ME 168, ¶¶ 13-19,

959 A.2d 734, nor was the court bound to accept the evidence of best interest offered by the mother, *see In re Children of James B.*, 2020 ME 14, ¶ 10, --- A.3d ---. The court expressly made several findings regarding the child's best interest, including that the child needs predictability and stability in her life, that she is thriving and her behavioral issues have improved while in her aunt's care, and that the aunt provides tremendous support to the child. *See* 22 M.R.S. § 4050(2)-(3) (2020); *In re Child of Ronald W.*, 2018 ME 107, ¶ 11, 190 A.3d 1029 ("[T]he court's order indicates that it carefully and appropriately considered the child's needs for stability and permanency . . . ."). Those findings were supported by sufficient record evidence presented at the termination hearing.[4] *See In re Child of Sherri Y.*, 2019 ME 162, ¶ 7, 221 A.3d 120 ("[A] court may draw from the same findings in making its unfitness and best interest determinations.").

The entry is:

Judgment affirmed.

---

[4] Although the mother does not challenge the court's findings regarding parental unfitness, those findings, too, are supported by competent record evidence. *See In re Child of Olivia F.*, 2019 ME 149, ¶ 3, 217 A.3d 1106.

8

Allan Hanson, Esq, Caribou, for appellant Mother

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Presque Isle District Court docket number PC-2017-30
FOR CLERK REFERENCE ONLY