MAINE SUPREME JUDICIAL COURT         Reporter of Decisions
Decision:    2026 ME 47
Docket:      Pen-24-575
Submitted
  On Briefs:  November 25, 2025
Decided:    May 21, 2026

Panel:         STANFILL, C.J., and MEAD, LAWRENCE, DOUGLAS, and LIPEZ, JJ.


IN RE CHILDREN OF JENNIFER B.


MEAD, J.

[¶1]  Jennifer B. appeals from a judgment of the District Court (Newport, *Ociepka, J.*), terminating her parental rights to five of her children pursuant to 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (iv) (2026).  The mother challenges the sufficiency of the evidence supporting the court's determination of parental unfitness as well as the court's conclusion that termination is in the children's best interests.  She argues that three of the four urine-drug-screen results admitted at trial should not have been admitted in evidence due to a lack of foundation.  We conclude that the evidence was admitted in error.  For the two screens to which there was an objection, we conclude that the error was not harmless.  As such, we vacate the judgment.

## I.  BACKGROUND

[¶2]  On April 12, 2023, the Department of Health and Human Services petitioned for a child protection order as to the five children and requested an

2

order of preliminary protection based on allegations of unsafe living conditions in the home and the children's history of truancy from school.[1]  The District Court signed a preliminary protection order on June 6, 2023, placing the children in the Department's care.

[¶3]  The court held a termination hearing on July 22, September 5, and November 5, 2024.  During the hearing, the Department offered the testimony of the program director of New Season, an addiction treatment center where the mother was a client receiving medication-assisted treatment and counseling services.  Based on information contained in the program file, the program director testified about three positive drug screens from January, June, and July 2024.  The Department also produced a forensic toxicologist who testified about the mother's drug screen from August 2024, which was positive for cocaine.  The mother tendered a hearsay objection to the admission of testimony about the June and July drug tests and asked the court to strike the testimony.  The court declined to strike the testimony.

[¶4]  Based on the evidence before it, the court found by clear and convincing evidence that the Department had established two out of four bases

---

[1] This appeal stems from two matters in the District Court involving five children.  The children all share the same mother, and the hearing on the petition for termination of the mother's parental rights addressed both matters simultaneously.  The mother has other minor children, one of whom lives with her, who are not the subject of these cases.

for parental unfitness. *See id.* It accordingly terminated the mother's parental rights in a judgment entered on December 6, 2024. The mother timely appealed. *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

**A.** **The court erred in admitting the testimony regarding the results of the January, June, and July drug screens.**

[¶5] When reviewing a trial court's ruling admitting evidence, "[w]e review the court's foundational findings or implicit findings to support admissibility of evidence for clear error, and will uphold those findings unless no competent evidence supports them. We review for an abuse of discretion the court's ultimate decision to admit the hearsay statement." *State v. Sheppard*, 2024 ME 84, ¶ 14, 327 A.3d 1144 (citation and quotation marks omitted). "A trial court commits 'clear error' on evidence questions when its findings regarding the foundation for admitting or excluding evidence are not supported by facts in the record." *State v. Mills*, 2006 ME 134, ¶ 8, 910 A.2d 1053.

[¶6] When "a challenge was not preserved for appellate review, we apply the obvious error standard." *In re Child of Corey B.*, 2020 ME 3, ¶ 6, 223 A.3d 462. "Under the obvious error standard, we review the admissibility of controverted testimony only when the error complained of is so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved

4

party of a fair trial." *State v. Profenno*, 516 A.2d 201, 203 (Me. 1986) (quotation marks omitted).

### 1.     June and July Screens

[¶7]  The mother objected to the admission of the June and July screens on the grounds that the testimony constituted inadmissible hearsay.  We review the admission of the evidence for an abuse of discretion.  *See State v. Pratt*, 2020 ME 141, ¶ 11, 243 A.3d 469.  The documentation of the test results from the June and July drug screens was never provided to the mother's attorney or offered as an exhibit during trial.  The positive results of the June and July drug screens were presented to the court solely through the program director's testimony, during which he stated that the mother's file included references to those results.  The program director had very little direct contact with the mother.

[¶8]   The court record contains no information regarding the circumstances under which the tests were taken, the method by which the test results were obtained, or the handling of samples.  The lone vehicle for presenting the test results to the court consisted of the program director's reference to them based upon statements entered into the mother's case

record, which was compiled by third persons.[2]  Because the program director was testifying to statements contained in the record and the statements were being offered for the truth of the matter asserted, the testimony about the test results should have been excluded as inadmissible hearsay.  *See* M.R. Evid. 801, 802.

[¶9]  Upon the mother's objection to the testimony regarding the June and July tests as hearsay, however, the court declined to strike the testimony and stated, "It sounds like there's going to be some additional information exchanged . . . and provided to the parties" regarding those tests.  No additional information was ever provided.

[¶10]  The program director returned to court on the third day of the trial and testified that he stood by his testimony concerning the June and July positive drug screens after reviewing the mother's file, despite his lack of personal knowledge of the testing process or results.

[¶11]  The court's initial decision to decline to strike the test result testimony was clearly predicated upon the court's expectation that there was

---

[2] The mother also referenced the June and July drug screens during trial.  The mother's testimony established that she was aware of the positive screens, but she maintained that they were not a result of illicit use.  The mother's awareness of the positive test results does not provide an adequate basis to independently establish the accuracy or admissibility of the underlying screens under Maine Rule of Evidence 801 because the mother consistently maintained that the results were false positives.  *See* M.R. Evid. 801(a), (d)(2)(A)-(B).

going to be additional information exchanged and provided regarding those tests, but that never occurred. As a result, the court's apparent acceptance of, and reliance upon, the hearsay testimony regarding the June and July drug screens constituted error. *See* M.R. Evid. 801, 802.

### 2. January Screen

[¶12] The result of the January drug screen also was admitted through the testimony of the program director under the same circumstances as the June and July results. The January test result was inadmissible hearsay for the same reason as the June and July test results. Because the mother did not object to admission of the January drug screen at trial (she simply asserted that the test results were false positives), we typically would review the admission of that evidence for obvious error. *See In re Child of Corey B.*, 2020 ME 3, ¶ 6, 223 A.3d 462. However, we need not determine whether admission of this evidence alone rose to the level of obvious error, meaning that it caused the mother to suffer manifest injustice, *see Profenno*, 516 A.2d at 203 , because we conclude that the court's judgment must be vacated in any event. *See infra* ¶ 16.

### 3. August Screen

[¶13] The August drug screen occurred on August 22, 2024. The positive result from that test was admitted in evidence as an exhibit following the

testimony of a forensic toxicologist. The forensic toxicologist identified the mother's drug test results during testimony based on her professional and personal knowledge, and the test result document was admitted in evidence. When asked, the mother advised the court that she did not object to its admission. Although the mother argues on appeal that the evidence is not reliable, we find no error in the admission of the August drug screen.

**B.     The error in admitting the results of the June and July screens was not harmless.**

[¶14] "An error is harmless if it is highly probable that the error did not affect the factfinder's judgment." *State v. Kalex*, 2002 ME 26, ¶ 22, 789 A.2d 1286 (quotation marks omitted). When terminating the mother's parental rights, the court focused upon and emphasized the drug test results:

> [The mother] had a drug screen in January of 2024 that was positive for fentanyl and cocaine. She had drug screens that were positive for cocaine on June 18, 2024, July 25, 2024, (three days after the first day of trial on this petition) and August 22, 2024. [The mother] had some explanations for why these tests may have been "false positives," but the Court does not find those explanations credible. The Court finds that the most reasonable inference is that [the mother] used in January, June, July, and August of 2024.

In concluding that the mother is unfit, the court explicitly declared that,

> [b]ecause the Court has found that the positive drug screens in January, June, July, and August of 2024 were not "false positives," the Court concludes that they are, unfortunately, a representation

that [the mother] has continued to struggle with substance use issues, even while this matter was scheduled for final hearing dates on the Department's petitions for termination of parental rights. What is more, the denials and alternative explanations offered by [the mother] reflect an unwillingness or inability to recognize her own ongoing need to address those issues.

[¶15]  The trial court relied heavily on the results and timing of all four positive drug screens in making its determination that the mother is unfit.  It is unclear, given the language in the judgment, whether the trial court would have reached the same outcome if the evidence included only the January and August screens.[3]  As a result, we are unable to conclude that the court's error in basing its decision, in substantial part, on the June and July drug tests was harmless.[4]

---

[3]  The mother had a history of other issues, such as inconsistent counseling attendance, that were cited in the judgment.  However, based on the extensive references to, and substantial reliance upon, all four of the drug screens, we cannot determine that the inconsistency with other services and factors would have been sufficient, standing alone, for the trial court to terminate the mother's parental rights.

[4]  Although the erroneous admission of these tests is sufficient for us to conclude that the judgment must be vacated, we note briefly that we also have concerns about the court's analysis regarding the best interests of the children.  In determining the best interests of the children in a termination proceeding, section 4055(2) requires that the court consider the "needs of the child, including the child's age, the child's attachments to relevant persons, periods of attachments and separation, the child's ability to integrate into a substitute placement or back into the parent's home and the child's physical and emotional needs."  The court is also required to "consider the wishes of a child, in a manner appropriate to the age of the child."  22 M.R.S. § 4055(3).  In making the best interest determination, the court need not explicitly address every one of the statutory factors.  *See In re Child of Stacy H.,* 2020 ME 66, ¶ 8, 232 A.3d 212.  Nonetheless, the judgment must contain specific findings of fact that "reflect an independent articulation of the particular facts forming the basis of the court's reasons in support of its ultimate findings regarding . . . the children's best interests" and that "sufficiently inform the mother and this Court of the basis of the court's decision." *In re Children of Billie S.*, 2024 ME 1, ¶ 8, 307 A.3d 1046; *see* M.R. Civ. P. 52(a); 22 M.R.S. § 4055.

Here, the determination of the best interests of the five children does not appear to adequately address evidence that the children wish to be reunited with their mother and that the mother is

Because that is a sufficient ground upon which to vacate, we need not determine whether the additional erroneous admission of the January results would require reversal under the obvious error standard.

[¶16] Because the court's conclusion of unfitness was based in very large part upon the testimony about the four positive drug screens, two of which were admitted in evidence (over objection) and without adequate foundation in error, we conclude that the error was not harmless. As a result, we vacate the termination of the mother's parental rights and remand for further proceedings.

The entry is:

> Judgment vacated. Remanded for further proceedings.

---

Allison Muir Kuhns, Esq., Law Office of Allison Muir Kuhns, Portland, for appellant Mother

Aaron M. Frey, Attorney General and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Bangor, for appellee Department of Health and Human Services

Newport District Court docket numbers PC-2023-08 and PC-2023-09
FOR CLERK REFERENCE ONLY

---

apparently fit to maintain custody of and parental rights to her older children. We acknowledge that a parent may be sufficiently fit to take care of an older child but not younger children. We also understand that a child's objection to the termination and wish to be reunited is not controlling. Nonetheless, these facts appear to merit discussion in a termination decision.